BELLE J. ERHARDT ET AL. *vs.* THE BALTIMORE MONTHLY MEETING OF FRIENDS, PARK AVE., ET AL.

*Validity of a Devise to a Religious Corporation for an Educational Use Recognized as a Corporate Function.*

A testator gave the residue of his estate to the trustees of the Monthly Meeting of Friends, a corporation, in trust to hold the same in such manner as to them shall seem best for the object intended and to apply the income thereof for the use of the school under the charge and control of the said Monthly Meeting. The devisee was empowered by its charter to conduct educational as well as religious operations and had carried on for many years a secular, unincorporated school as a part of its recognized work. *Held,* that the devise in this case did not create a trust void for uncertainty, but is valid because it is a gift to the corporation to be used for a purpose within the scope of its corporate functions, and constituting an integral part of its work.

Appeal from a decree of the Circuit Court of Baltimore City (RITCHIE, J.), by which it was adjudged that the residuary clause referred to in these proceedings is a valid devise and bequest and that the Baltimore Monthly Meeting of Friends "is entitled to receive the rest and residue of said estate to be held by it for the purposes set forth in said residuary clause." According to the allegations of the bill of complaint the value of the property passing under the residuary clause was about $33,000.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PEARCE, SCHMUCKER and JONES, JJ.

*George Whitelock* and *Edward I. Koontz* (with whom was *W. Thos. Kemp* on the brief), for the appellant.

By the terms of the residuary clause of the will of John Jewett, a trust was sought to be created. It would, of course, have been perfectly competent for the testator to make the appellee the direct and exclusive object of his benevolence by a

direct gift to it, of the residue of his estate for its own use ; but this he did not do, and carefully selected a specific object and purpose, outside of its corporate functions and objects, for his testamentary benevolence, not by mere precatory expressions, but by apt and express words, under which the principal of the fund was directed to be held in trust and the income therefrom to be applied (*Dulany* v. *Middleton*, 72 Md. 70), to the particular purpose and object to which he desired to extend his aid.   It has been held that the testamentary use of the word "trust" does not, *per se*, operate to create a trust, where it is the manifest purpose to give the subject-matter of the bequest, together with the entire beneficial interest and equitable estate therein, to the legatee.   *Woman's Miss. Society* v. *Mitchell, ante* p. 199.

Conversely, it has been held that the use of the word trust is not necessary to create a trust.   "Any language which satisfactorily indicates an intention to stamp upon the devise the character of a trust will be sufficient.   The heir is not to be excluded on mere conjecture ; on the contrary, there must be satisfactory evidence and intention to give a beneficial interest to the devisee."   *Saylor* v. *Plaine*, 31 Md. 163-4, affirmed in many recent cases.   *Smith* v. *Church Extention Society*, 56 Md. 396.   *Am. Cas. Ins. Case*, 82 Md. 560.

It is insisted that there is no conflict between these two statements of the law.   On the contrary, the application of these propositions to the respective facts of the cases cited to support them, plainly shows the necessity and the reason for the fundamental rule underlying both propositions, namely, that the words of the testator should be interpreted and defined by the Court in accordance with their primary and common acceptation as indicating that he in fact willed what he actually said, unless other expressions used by him plainly manifest that he did not will what he said.   *Hawkins' Construction of Wills*, 1, 2.   In other words, it is submitted that the appellee is under the *onus* of showing from other expressions used, that when the testator employed the " words in trust," he did not mean *in trust.*   And it is not incumbent upon the appellants

to show that, when the testator directed his residuary estate to " be held in trust," he in fact, meant what he said—that it should be held in trust. The law thus presented is an "inflexible rule of construction." *Wigram on Wills,* 58, 66.

The difference between this case and that of the *Womans' Foreign Miss. Socy.* v. *Mitchell,* is the very obvious distinction between a gift to a body corporate in trust for one of its express charter purposes, and a gift to a body corporate in trust for a purpose for which it was not incorporated. In the one instance the law implies that the testator has no intention to create a trust, while in the other instance, express words of trust being used, the law presumes a trust to have been intended by the testator. This conclusion involves no open or veiled attack upon the charter power of the appellee to accept the subject-matter of the bequest, but the devise is deemed invalid in law, because it is for a purpose and an object beyond the powers and the functions of the appellee as a religious corporation, whether regard be had to the provisions of the general law under which it was incorporated, or to the character of the particular school in question, and the church discipline and customs of the religious Society of Friends. If this be true, it necessary follows that the bequest could not be upheld on the ground that it is for an integral part of the work or objects of the society.

Independently of the express phraseology employed in this devise, it is significantly observable that the testator has separated the principal and the income, and has directed the investment of the principal, and the application of the income only, to the school which he intended should receive the benefit of his donation, a result which would not follow if no trust was created, because, in that event, the devisee necessarily could, in its unlimited discretion, apply both the income and principal, either to the maintenance of the school, or to any one or all of its corporate purposes. The separation in the mind of the testator of the school from the meeting is emphasized by the fact that he does not refer to the school as being the school of the meeting, but merely as being under its charge or control.

The Court below has determined in its decree that the meeting must, in accordance with the intention of the testator, invest the property and apply the income solely for the benefit of the school. If this is done, a trust in fact is created, and if a trust is created, the school cannot be regarded as a part of the church. The school must be an independent legal organization in order to be in a position to demand from the meeting the rights to which the Court has clearly held it entitled. From all of which it follows that the Court, before it passed this decree, must have ascribed to the school a distinct individuality sufficient to confer upon it rights incidental to the separate ownership of the equitable interest in the fund. This result, it is submitted, is correct, and precludes the Court from holding that there was no trust, and furthermore, amounts to a direct finding that the school was not an integral part of the church organization.

2. The trust sought to be created is a perpetuity. It will be observed that there is no express limit to the performance of the trustee's duties. The trustee itself has, by the express provision of its charter, and of the law under which it was incorporated, perpetual existence, and it is directed by the will to collect the income of the fund and apply the same without time limitation to the uses of the school. The analogy between this devise and the devise in the case of the *Missionary Society* v. *Humphreys*, (91 Md. 131), is so striking that further argument upon the question of perpetuity would seem to be unnecessary. The reasoning of this Court in the *Humphrey's case*, will result in striking down the bequest in the case at bar. It may be sought to evade the application of that case to the case at bar upon the ground that the trustee in the *Humphrey's case*, was capable of holding, and the beneficiary of receiving, while here the beneficiary is unincorporated, and, therefore, incapable of accepting the benefit of an equitable estate. To this argument, the appellants reply that the rule against perpetuities, and the rule in respect of restraints on alienations originated in public policy, upon which they still rest. They have, therefore, been " remorselessly applied " in

Maryland wherever the validation of the bequest would result in perpetually placing property *extra commercium.*   And this is true whether the beneficiary be capable or incapable of taking, as is demonstrable from the case of *Needles* v. *Martin,* 33 Md. 616, and the celebrated case of *Dashiell* v. *Attorney-General,* 5 H. & J. 401, where the bequests were struck down on the double ground that they were void for indefiniteness and tended to create perpetuities.   It is likewise urged that it was the evident intention of the testator to dedicate the subject-matter of the residuary bequest to the specific use and purpose therein so particularly mentioned; and this dedication was to be in such manner that it should forever remain *extra commercium* and beyond the power of alienation.   *Peter* v. *Carter,* 70 Md. 139.

3. The object of the trust is vague, indefinite and uncertain.   *Dashiell* v. *Atty.-General,* 5 H. & J. 392; *Trinity Church* v. *Baker,* 91 Md. 539; *Needles* v. *Martin,* 33 Md. 609; *Rizer* v. *Perry,* 58 Md. 115; *Church Exten. Socy.* v. *Smith,* 56 Md. 362.

A great mass of documentary and oral evidence has been introduced by the appellee for the purpose of showing that the Society of Friends has since its foundation been interested in the secular education of the children of its members.   However it may have been formerly, this "guarded" educational work can hardly be called a religious function, especially as the religious instruction of the youth of this denomination is now committed to the Sunday-schools, which have been in full vogue since a date long anterior to the incorporation of the appellee.   The fact stands out clear upon the Record, that in a large jurisdiction covering the whole Western Shore of Maryland and parts of Virginia and Pennsylvania, the Baltimore Yearly Meeting of Friends, after an existence going back to the era of Cromwell and the English Commonwealth, has today but four secular schools in any wise or in any sense under its influence.   Formerly the tuition of children in religious matters was conducted in the home.   Its religious instruction of youth is now carried on entirely through the medium of its First-day schools or Sunday-schools, which

have increased so rapidly that within the same territory there are at the present day twenty-eight such schools in active operation.

4. The appellee has no legal existence and is incapable of taking the bequest.

*George R. Gaither* and *Leon E. Greenbaum*, for the appellee.

1. The Court below, in its oral opinion, did not devote much attention to the point that the Baltimore Monthly Meeting of Friends, Park avenue, was not properly incorporated, and the appellee does not deem it necessary to devote much attention to it in this brief. The Baltimore Monthly Meeting of Friends, Park avenue, was incorporated under the provision of the Code of Public General Laws, Art. 23, secs. 205-217, and a copy of the certificate of incorporation will be found on page 13 of the Record. Upon examination it will be seen that every provision of these sections has been substantially complied with. It has been repeatedly decided in Maryland that substantial compliance with the provisions of the law in reference to the creation of corporations is all that is necessary. As the Court has said in *Hughes* v. *Antietam Co.*, 34 Md. 324 : "These objections seem to us more technical than sound. \* \* \* Whilst the requirements of law are to be *fairly and substantially complied with*, the rights and franchises of corporations and the interests of stockholders are not to be *frittered* away by technicalities, nor sacrificed to a *strained* construction of the statute." *Reid* v. *Stouffer*, 56 Md. 236.

It is equally clear that even if the objections to the validity of the corporation were based on serious departure from the requirements of the corporation laws of this State, that they could not be successfully maintained in a collateral proceeding of this character. *Lord* v. *Essex Assn.*, 37 Md. 327; *Laflin* v. *Sinsheimer*, 46 Md. 315; *Keene* v. *Van Reuth*, 48 Md. 184; *Re. Cong. Church*, 131 N. Y. 1; *Cook on Corporations*, sec. 637; *Thompson on Corporations*, secs. 507, 509; 1851; 8212.

2. Although the appellant in his bill of complaint has al-

leged three reasons for the invalidity of the residuary clause, the argument in the Court below was limited to but one of these, for whatever doubt might have heretofore existed, the *Bennett will case,* 91 Md. page 10, and the *Mitchell case,* decided March 8th, 1901, conclusively demonstrated that a perpetuity is not created by language similar to that embodied in the present will, and that a corporation has full power to hold funds for an indefinite period for purposes germane to the object of its creation. The main, if not the only point therefore in the present case is, whether the object of the trust to the Baltimore Monthly Meeting of Friends, Park avenue, is too vague and indefinite to be enforced by a Court of equity. The general question involved has been so frequently before the Court of Appeals in the last twenty years, that it is only necessary to refer to a few of the leading authorities. *Eutaw Place Church* v. *Shively,* 67 Md. 493; *Halsey* v. *Couvention of Prot. Epis. Church,* 75 Md. 275; *Hanson* v. *Little Sisters of the Poor,* 79 Md. 434; *Bennett case,* 91 Md. 10; *Baker case,* 91 Md. 575; *Mitchell case, ante* p. 199.

There can be no question of the validity of a bequest to a corporation for a particular purpose, if such purpose is shown to be an integral part of the work of such organization. In no case has the Court of Appeals of Maryland declared a bequest to a corporation for special purposes void for want of certainty, even though such purpose was carried out through an unincorporated agency, if such unincorporated agency were a well-recognized and appropriate method of carrying out one of the objects for which the corporation was created.

It is not proper that any judicial body should *a priori* determine the limits of the work of any religious corporation. As JUDGE RITCHIE in his oral opinion in deciding this case below said: "My church, no man's church, can be taken as giving the standard of religious creed of any other church, or any other religious denomination or sect. Our law recognizes the infinite variety of creeds. I cannot take, as I say, my own denomination, no more can I take the Presbyterian sect and its tenets as a standard. I cannot say to the Catholic, I cannot

say to the Hebrew, that what you are doing my church does not look upon as an integral part of religious work."

The history of the Society of Friends, from its very inception, is replete with the work of the members of the society in establishing and maintaining secular schools as an essential part of their religious work, and as an integral object of the religious bodies of which individual friends are members. It is summarized in the book of discipline of the society, which is an exhibit in this case, which book has been recognized by the Legislature of Maryland, by the Acts of Assembly of 1867, chapter 108, and of 1888, chapter 129, in the incorporation of the Baltimore Yearly Meeting of the Society of Friends, for the purpose of carrying out the principles of said book of discipline.

It is true that the only religious feature connected with the educational work consists of a period of silent worship and the reading of the Bible every morning at the opening of the school, and that the character of education imparted is substantially the same as that in any first-class school conducted by an individual or educational corporation ; *but such form of instruction is the peculiar type appropriate to their form of worship.*

The appellants, however, who rely upon this, err in the conclusion they draw from it. We contend that the essential question is not whether the education carried on is secular or religious, or a combination of the two, but whether the education carried on is an integral part of the work of the religious body, and whether connection between the religious body and such work is immediate and definite.

There can be no doubt from the testimony that secular education is an important part of the activity of members of the Society of Friends and of the bodies in which friends unite. There is certainly nothing incompatible with the idea of religion to have educational work carried on under the supervision of a religious body, and no Court will say that such work cannot be carried on by an agency created from and governed by the religious body. The standard which the society has

adopted and the methods that it pursues are such as it deems most conducive to the fulfillment of the purposes of its founder, who believed that education was essential to the proper promulgation and appreciation of its doctrines. He deemed it an appropriate means toward carrying out his aim and his followers have worked in that spirit, and that is the sole test. *Shively's case*, 67 Md. 495; *Halsey's case*, 75 Md. 282; *Hanson's case*, 79 Md. 434.

BRISCOE, J., delivered the opinion of the Court.

The appeal in this case is taken from a decree of the Circuit Court of Baltimore City passed on the 18th day of March, 1901. The object of the proceedings was to obtain a construction of the last will and testament of John Jewett, late of Baltimore City, deceased, and for an administration of his estate in a Court of equity.

Mr. Jewett, the testator, died on the 3rd day of April, 1900, leaving a large and valuable estate of real and personal property and his will, dated October 31st, 1899, was duly probated and recorded in the Office of the Register of Wills of Baltimore City. The testator died unmarried and without children, but leaving as surviving heirs, a brother and certain nephews and nieces. By his will he devised and bequeathed all of his property and effects of every kind, real and personal in the following manner, except the sum of twelve thousand dollars which he disposed of by specific legacies to his relatives :

" I give and bequeath to Townsend Scott, hereinafter named as my executor, twenty-five shares of Consolidated Gas Company's Stock, in trust, to pay the income or dividends thereof to Maria Waugh so long as she may live, and upon her decease to apply the principal towards the residue of my estate.

"I give, devise and bequeath all the residue of my estate, real, personal and mixed, of whatsoever kind and wheresoever situated to the Baltimore Monthly Meeting of Friends, Park Avenue, a body corporate, under the general corporation laws of the State of Maryland, in trust for the following purpose, that is to to say :

"The trustees of said corporation and their successors to invest said residue or to hold the same in such manner as to them shall seem best for the object intended, and to apply the income thereof for the use of the school known as the Park Avenue Friends' Elementary and High School, or by whatsoever name the said school may hereafter be called, said school being under the charge and control of the said Baltimore Monthly Meeting of Friends, Park Avenue, and now held and conducted in a building lately erected on ground belonging to said corporation, and adjoining that of their meeting house on Park Avenue, Baltimore."

These are the principal clauses of the will which are involved in this controversy and the validity of which, are attacked by this proceeding. The grounds relied upon by the appellants and those alleged in the bill to establish the invalidity of the residuary clauses of the will are, first, because the provisions which dispose of the remainder, after the life-estate, and the residuary devises and bequests are void and invalid because they constitute an attempt to create a trust in perpetuity; second, because the trust attempted to be created is for the use and benefit of an unincorporated institution, to wit, the Park Avenue Friends Elementary and High School; third, because the objects and purposes for which the trust was attempted to be created are too vague and indefinite to be enforced; and fourth, because the trustee is without legal capacity to take and execute the trust. The executor and the Baltimore Monthly Meeting of Friends, Park Avenue, answered the bill alleging the validity of the will, and after a hearing, upon testimony taken, a decree was passed sustaining the residuary clauses of the will as a valid devise and bequest and decreeing "that the Baltimore Monthly Meeting of Friends, Park Avenue, was entitled to receive the rest and residue of the estate to be held by it for the purposes set forth therein." From this decree this appeal has been taken.

The main object in the construction of wills is to ascertain the intention of the testator and according to the settled canons of construction, to give and to carry into effect that intention,

if it can be done. It is very manifest, if the appellant's contention in this case is sustained, that one of the principal objects of the testator's bounty will be defeated and the bulk of his estate will pass to those whom he clearly did not intend should have it.

The substantial question in the case is whether the devise and bequest to the Baltimore Monthly Meeting of Friends, Park Avenue, is a valid devise and bequest. There can be no serious dispute or controversy as to the law controlling the decision of a question of this character in this State, at this date. In the case of the *Trustees of the Eutaw Place Baptist Church* v. *Shively*, 67 Md. 493, where a testator bequeathed one thousand dollars to a church, the income, interest or proceeds thereof to be applied to the Sunday-school belonging to or attached to the church, the latter being a corporate body, but the Sunday school was not, this Court held that as the Sunday school was shown to be an integral part of the church organization and therefore embraced within the scope of the corporate functions and work of the church, the bequest was sufficiently definite and certain and capable of being enforced.

In *Halsey et als.* v. *The Convention of the Prot. Episcopal Church*, 75 Md. 280, where a testatrix devised a farm to her nephew for life, and upon his death one hundred acres of the farm was devised to the Convention of the Protestant Episcopal Church of the Diocese of Maryland, a body corporate, to be held as a place for a Church School for boys ; to be under the control and supervision of the church ; and where she also bequeathed a fund of $20,000.00, the income of which was to be paid to her sister for life, and then $5,000 of the fund should at her sister's death be paid to the Convention of the Protestant Episcopal Church as an endowment for Warfield College, this Court said : "It is well settled that a Court of chancery has jurisdiction independent altogether of the statute to enforce a trust for charitable and religious purposes, provided the devise or bequest be made to a person or body corporate capable of taking and holding the property so devised and bequeathed, and provided, further, the object and

character of the trust be definite and certain. When these exist—when the gift is made to one capable of taking it, and when the trust is declared in definite terms—a Court of chancery has the same power to enforce such a trust for a charitable or religious purpose, as it has to enforce a trust for any other purpose."

In *Hanson et al.* v. *Little Sisters of the Poor*, 79 Md. 435, a testator devised certain warehouse property to a trustee, in trust, to hold the same and collect the rents and income, and after paying all taxes, to divide the net income thereof equally between the Little Sisters of the Poor, the Vestry of Saint Mary's Church, Baltimore County, and other corporations. This devise was sustained, and the objections to its validity were overruled.

In *Bennett* v. *Humane Impartial Society*, 91 Md. 10, a testator devised the residue of his estate to the Aged Men's Home and Women's Home, provided the managers of the homes admit one aged man or woman, and it was held that the will did not create a trust, and the devise was not void. The Chief Judge of this Court in delivering the opinion, said: "A trust may be created either by the use of appropriate technical words which, of their own proper vigor, indicate that a trust was designed to be raised; or, in the absence of such words, a trust may be created by other language when the purpose to establish it is otherwise sufficiently apparent. In both instances, however, it always becomes a question of intention as to whether a trust exists. If there be a manifest design to establish a trust then a trust will be declared though no apt technical words are employed; and if there be an equally manifest design not to establish a trust, then no trust will be declared though the words employed would, but for the contrary intention, be sufficient to create a trust." And in the recent case of *Woman's Foreign Missionary Society of Methodist Episcopal Church* v. *Mitchell, ante* p. 199, decided on March 8th, 1901, a will was sustained where a clause in the will bequeathed the testatrix residuary estate to the Woman's Foreign Missionary Society of the Methodist Episcopal Church

to be held in trust, by that Society for the education of six girls in India, &c., the remainder to be used for the education of Christian girls and to be named after the testatrix. The Court said: "Now, perhaps, had the precise phraseology which is found in the will before us been used in making a like devise and bequest to a natural person, it might be said that the design was to create a trust, because the purposes indicated are not those ordinarily peformed by an individual; but when it is remembered that the very end which the corporation here made the beneficiary was organized to effect is the education of Bible readers and the instruction of girls in foreign lands, it becomes evident that the property was given to the corporation not in trust for indefinite objects, but that it was given to it to be used for its recognized and clearly defined corporate purposes. The specific design of the gift is that the proceeds of the property shall be used (that is, spent) by the beneficiary for its chartered ends, and not for some one else's benefit. The corporation is not to hold the fund for the use of the others, but it is to spend that fund in the prosecution of its missionary work. The gift is, therefore, not to the society in trust, but to it for its legitimate corporate uses, and is free from restrictions other than the conditions that have been indicated."

We have carefully examined the case before us, and can find no essential difference between the cases just cited and the case now under consideration.

There can be no question, that the law has been well settled in this State, that a bequest and devise to trustees for the benefit of a vague, uncertain and indefinite object, is as invalid as a bequest to the object itself. *The Church Extension, &c.,* v. *Smith,* 56 Md. 362; *Trinity M. E. Church* v. *Baker,* 91 Md. 567.

The proof, in this case shows that the Baltimore Monthly Meeting of Friends, Park avenue, is a corporate body, duly incorporated under Art. 23, secs. 205–207 of the Code. A copy of the certificate of incorporation is filed as an exhibit in the case, and the plaintiff's bill so declares. This certifi-

cate states that the corporation so formed is "a corporation for the purpose of acquiring and exercising all the rights and powers incident to religious corporations under the laws of the State of Maryland, with perpetual succession and have elected trustees, and have determined on the following plan, agreement and regulation and that the corporation is formed under the articles, conditions and provisions herein expressed and subject in all particulars to the limitations relating to corporations which are contained in the general laws of this State ; that the corporation is to be located in the city of Baltimore and its work is to be carried on in that city and in the State of Maryland and in such other places as its religious, *educational or benevolent* operations *may require.* The trustees chosen shall be a body corporate according to the laws of the State of Maryland by the corporate name of the Baltimore Monthly Meeting of Friends, Park avenue, with all the rights and powers incident thereto and shall have a corporate seal and the control and management of the property and all business affairs of the corporation subject at all times to the direction and control of the Society in Monthly Meeting assembled and in accordance with the rules of discipline of the Yearly Meeting of Friends held on Park avenue, in the city of Baltimore as published by John W. Woods, Baltimore, in 1881, being their last book of discipline and all amendments thereto in so far as the same relates to effect the government of the Monthly Meetings of the said Society of Friends.

By sec. 206 of Art. 23 of the Code, it has power and is capable of taking and holding property by "gift, bargain, sale or devise of any person, body politic or corporate, capable of making same, and to use or lease, mortgage or sell, and convey the same in such manner as they may judge most conducive to the interest of their respective churches, societies or congregations."

Here, then, is a corporation capable of taking, and the object and purpose of the bequest and devise are definite and certain, and can be enforced by a Court. *Crisp* v. *Crisp et al.,* 65 Md. 422.

While it is true, that the school known as the Park Avenue Friends Elementary and High School, is not an incorporated body, but it is an integral part of the organization of "the Society of Friends" and as such, within the corporate functions and work of that organization. The devise in this case was to the Society of Friends to be used for one of its recognized and clearly defined corporate purposes.

One of the express charter purposes of the corporation is to carry on in the city of Baltimore and State of Maryland, "religious, educational and benevolent operations." The proof in this case shows that "the establishing and maintaining of secular schools" is an essential part of the religious work of the Society of Friends. It is stated in the Book of Discipline of the Society of Friends that "The important subject of the education of our youth, in piety and virtue, and giving them useful learning, under the tuition of religious, prudent persons, having, for many years, engaged the attention of the Yearly Meeting, and advices having, from time to time, been issued, to the several subordinate meetings, it is renewedly desired, that Quarterly, Monthly and Preparative Meetings may be excited to proper exertions, for the establishment and support of schools; there being but little doubt, that as friends unite and cherish a disposition of liberality, for the assistance of each other, in this interesting work, they will be enabled to make such provision, as would encourage well qualified persons to engage in this arduous employment; for want of which it has been observed, that children have been committed to the care of transient persons, of doubtful character, and sometimes of corrupt minds; by whose example and influence they have been betrayed into principles and habits, which have had an injurious effect on them through life. It is, therefore, indispensably incumbent on us, to guard against this danger, and to procure tutors of our own religious persuasion; who may not only be capable of instructing them in useful learning, to fit them for business, in relation to temporal concerns, but to train them up in the knowledge of their duty to God, and one towards another."

Mr. Joseph J. Janney, a member of "the Society of Friends" and an official of the Baltimore Monthly Meeting, a witness, testified as follows:

"Q. What has been the rule and principles of the Society of Friends regarding schools for the education of the children of Friends?

A. They have always considered it a subject of paramount importance.

Q. Is that the tradition of the society from its first foundation?

A. My knowledge of the history of the society would lead me to think so.

Mr. Brown:

Q. What has been the rule and principle of the society as to the establishment of secular schools?

A. The principle of the Society of Friends from the very foundation has been to give their children a guarded school education, and to establish schools, and it has been especially so in America. I might say the early settlers, when they first settled here, first established a home; a very rude home it was. The next thing was to establish a meeting at their homes, and the next move was to have a school, and the next move was to have a school of a higher order."

A number of other witnesses testified substantially to the same facts.

The history of the Society of Friends in Baltimore as to schools is thus briefly stated by the appellee, in his brief, and we here quote it. "The Yearly Meeting was established at about the beginning of the century, and the Monthly Meeting at about the same time. The Monthly Meeting was established on Lombard street in 1805, and remained there until 1887, in which year it was moved, and was finally established in 1889 on Park avenue. As early as 1815 the Fairhill School was established by the Yearly Meeting, but even before that time there was a small school on St. Paul's lane as far back as 1800. A regular committee on education of the Monthly Meeting was appointed as early as 1850, which com-

mittee had general supervision of educational and financial matters pertaining to the schools, or in the language of Mr. J. K. Taylor, 25th question and answer, the committee on education of the Baltimore Monthly Meeting of Friends, Park avenue, has " absolute control of the schools, of selecting the teacher, of deciding upon the studies and the entire management of the school, and reports annually, sometimes oftener, to the Monthly Meeting for its endorsement." In 1849 a school was established in connection with the Baltimore Monthly Meeting of Friends on Lombard street, if not earlier. In 1864 this school came under the supervision of Eli M. Lamb, but always under the general control and management of the Baltimore Monthly Meeting of Friends, and its exercises were held in the same building in which the religious work of the society was carried on. For the next twenty years this close union continued, and the Society of Friends carried on its religious services on Sunday, and its educational work during the week days, in the same building. In the year 1885 the property, however, was sold and the school opened on McCulloh street. In September, 1888, the committee of the meeting which had charge of this school was released, owing to certain differences which had arisen between it and the principal, Eli M. Lamb, but in November, 1888, a new school committee was appointed, and in April, 1899, one month after the opening of the new meeting house on Park avenuue by the Baltimore Meeting of Friends, Park avenue, this school committee opened a school in the meeting house under the name of the Friend's School. The name of this school was several times changed until it became known as the Park Avenue, Friends Elementary and High School, on the 18th day of September, 1899."

It is clear, we think, that the devises and bequests in this case are valid, and for the reasons we have given the decree of the Circuit Court of Baltimore City will be affirmed. The sanction of the Legislature, as required by Art. 38, Declaration of Rights, Constitution, will have to be obtained.

*Decree affirmed with costs.*

(Decided June 14th, 1901.)