## MAYOR AND CITY COUNCIL OF BALTIMORE *v.* PEABODY INSTITUTE OF BALTIMORE

[No. 59, April Term, 1938.]

*Decided June 29th, 1938.*

The cause was argued before URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Charles C. G. Evans, Deputy City Solicitor,* and *Charles R. Posey, Jr., Assistant City Solicitor,* with whom

was *R. E. Lee Marshall, City Solicitor,* on the brief, for the appellant.

*Charles McH. Howard,* for the appellees.

SLOAN, J., delivered the opinion of the Court.

J. Wilson Leakin, of Baltimore, died December 26th, 1922, leaving a last will and testament wherein, amongst numerous devises and bequests, there was this devise: "I leave to the Mayor and City Council of Baltimore the properties 101-103 N. Howard Street. 113-115 W. Fayette Street. Five years after my decease, the said properties to be sold and the proceeds invested in a public park."

The City of Baltimore has filed a bill against Susan D. Leakin, sister and sole heir at law of the testator, and The Peabody Institute of Baltimore, residuary legatee and devisee, wherein it says that it proposes to buy "* * * a number of small units of land located in different sections of the City of Baltimore, each of which and all of them together, to be known as 'The Leakin Park' or by some other similarly descriptive name and to be maintained as a part of the park system of the City of Baltimore." What the city proposes to . do, according to the testimony, is to establish several playgrounds out of the funds to be derived from the sale of the property, and "* * * to reserve out of said proceeds of sale and said income (rentals which now amount to $124,963) such an amount as in its discretion it deems advisable and necessary for the maintenance and upkeep of the said park." The bill then prays the court to "* * * take jurisdiction in the premises for the purpose of advising and directing" the Mayor and City Council of Baltimore, whether it may purchase a number of separate units of property from the proceeds and income derived from the property prior to sale, and whether it may reserve out of the proceeds such amount as in its discretion it may deem advisable.

Both defendants answered and said that the proposed

disposition of the proceeds from the property would be subversive of the testator's intention, and asserted that his gift was for the purchase of a park, and not a number of small units to be used, according to the testimony, as playgrounds. Miss Leakin, in her answer, denies that any part of the gift can be set aside for maintenance and upkeep.

The court decreed that the Mayor and City Council of Baltimore "* * * is not entitled or authorized to apply the proceeds derived from the sale and rental of the property devised to it by the will of J. Wilson Leakin, deceased * * * to the purchase of a number of separate units of land in different sections of Baltimore City * * * (nor) to apply the proceeds of sale * * * or any part thereof to the future maintenance and upkeep of any park acquired by the use of said fund," though the terms of the will would not forbid the application of such part of the fund as may be necessary to improve and equip the land so acquired to render it fit for use as a public park, from which decree the plaintiff appeals.

The decree expressly stated that it did not determine or decide whether any part of the rentals may be applied to maintenance and upkeep "* * * such question being apparently not submitted for determination by said bill, and plaintiff's counsel disclaims any intent to so submit the same," and we are therefore not free to decide that question (Code, art. 5, sec. 10) though we think the allegations of the bill are sufficient to determine the question.

The authority of the plaintiff to accept such a gift is derived from section 2, article 4, of the Code of Public Local Laws (Baltimore City Charter), which provides that "* * * said corporation may receive in trust, and may control for the purposes of such trust all moneys and assets which may have been or shall be bestowed upon it by will, deed or any other form of gift or conveyance in trust for any general corporate purpose, or in aid of the indigent poor, or for the general purposes of education or for charitable purposes of any description within the said city."

The contention of the plaintiff is that while it has authority under the Charter to take the fund, it is not restrained in the application of it to any purpose within its corporate powers, and it takes that to be the meaning of numerous decisions of this court, to the effect that gifts to any purpose within the general powers of a charity will be held valid. The main purpose of the City Charter is not to operate, conduct or manage a charity, which might include a public park as commonly understood, but to conduct a municipal government; to which the provision quoted is incidental, and not necessarily inherent in a municipality, as otherwise there would have been no occasion for the legislation to enumerate this amongst its powers. The section quoted permits the city to receive gifts or conveyances in trust for "any general corporate purpose," as well as aid to the poor, education or charitable purposes of any description. It has been held by this court that the maintenance of a park is a governmental function, recently in the cases of *Baltimore v. Ahrens,* 168 Md. 619, 179 A. 169, and *Baltimore v. State, use of Blueford,* 173 Md. 267, 195 A. 571, but whether a gift or conveyance to the city is for a general corporate function or a charitable purpose can make no difference in the application of the law to the donation under consideration so long as it is for any object coming within the scope of section 2. Whatever power the city has to receive this gift is derived from this section, and there is no more nor less right to divert a gift for any general corporate purpose, than one to be devoted to the indigent poor, education, hospital, or home for the aged. While the decisions in this state have generally had to do with gifts to charitable, religious, and educational institutions, they would be just as applicable to any gift for any lawful purpose or use covered by this provision of the Charter, and there is no contention that the gift with which we are here concerned does not come within its terms. It was on such a provision in the City Charter that the Supreme Court of the United States in *McDonogh's Executors v.*

*Murdoch*, 15 How. 367, 14 L. Ed. 732, at the December Term, 1853, upheld a bequest to the City of Baltimore for the establishment of what has ever since been known as the McDonogh School, administered by an agency created by an ordinance of the Mayor and City Council of Baltimore City. City Code, art. 26. That the City of Baltimore has the authority to accept gifts to a charity managed and operated by it is also supported in the case of the same school in *Barnum v. Baltimore*, 62 Md. 275; *Van Reuth v. Baltimore*, 165 Md. 651, 170 A. 199.

What the city contends is that, having the authority, under its Charter, to accept the gift, it can divert it to any purpose, charitable or municipal, within its corporate powers, and this is the construction it puts on many decisions of this court to the effect that if a gift to a charity is for any purpose within its corporate powers it is valid. We are not aware that any such inference can be drawn. In nearly every instance the question presented was the validity of a gift to a charity for a limited or special use or purpose. *Halsey v. Convention of P. E. Church*, 75 Md. 275, 282, 23 A. 781; *Hanson v. Little Sisters of the Poor*, 79 Md. 434, 436, 32 A. 1052; *Trinity M. E. Church v. Baker*, 91 Md. 539, 566, 46 A. 1020; *Woman's Foreign Missionary Society v. Mitchell*, 93 Md. 199, 48 A. 737; *Baltzell v. Church Home*, 110 Md. 244, 73 A. 151; *Conner v. Trinity Reformed Church*, 129 Md. 360, 99 A. 547; and numerous other cases of like import digested in 1 *Md. Law Review*, 105, 117-120.

It has been frequently said by this court that such "trusts" or "gifts" are capable of being enforced. *Barnum v. Baltimore*, 62 Md. 275, 279; *Crisp v. Crisp*, 65 Md. 422, 426, 427, 5 A. 421; *Eutaw Place Baptist Church v. Shively*, 67 Md. 493, 497, 10 A. 244; *Halsey v. Convention of P. E. Church*, 75 Md. 275, 283, 23 A. 781; *Hanson v. Little Sisters of the Poor*, 79 Md. 434, 438, 32 A. 1052; *Erhardt v. Baltimore Monthly Meeting*, 93 Md. 669, 682, 49 A. 561. The same argument as here was made in the case of *Barnum v. Baltimore*, 62 Md.

275, 298, with the idea, however, of defeating the gift, where it was said: "* * * if such propositions were maintainable upon authority, we should desire no further argument to justify us in declaring against the validity of the trust. * * * No principle is now better settled than that where property is held by a municipal corporation in trust, or where the trust reposed in the corporation is for a charity within the scope of its duties, a Court of Chancery will prevent the misapplication of the trust funds, and compel the execution of the trust. * * * The Court will interpose and exercise its jurisdiction at the instance of the Attorney-General, or, according to many authoritative precedents, upon the application of the corporators or person interested." While the gift here made was prior to the Act of 1931, ch. 453 (Code [Supp. 1935] art. 16, sec. 268A) and its validity not affected by it, it settles the question of procedure, by saying that "Courts of Equity within this State shall have full jurisdiction to enforce trusts for charitable purposes, upon suit of the State by the Attorney-General or upon the suit of any person or persons having an interest in the enforcement thereof."

In only one case in this state has resort been had to chancery to enforce the object of a trust to a specific purpose within a charity, and that was in the case of *Peter v. Carter,* 70 Md. 139, 16 A. 450, wherein the diversion of a teachers' salary fund to the construction of a school building, this court decided, could be restrained by injunction, and the case was remanded that this be done. The plaintiff says in its brief that this decision is "unsound." We do not think so, as it has been cited by this court, in *Baltzell v. Church Home,* 110 Md. 244, 271, 73 A. 151, as authority for the statement that "a court of chancery has jurisdiction, independent altogether of the statute [43 Elizabeth], to enforce a trust for charitable and religious purposes."

The plaintiff also attempts to support its argument that it would not be accountable for a diversion of the gift because there is no condition subsequent in the devise

or provision for a reversion or defeasance in case of a diversion. This question we think is premature now, as the question may never arise.

What the City has to decide now is whether it is going to accept the gift with the condition that it observe the donor's wishes and intention in the purchase, im provement, and equipment of one park, (*State Tax Commission v. Harrington*, 126 Md. 157, 166, 167, 94 A. 537) with the obligation thereafter to maintain it as "a public park." If the City is not willing to do these things, the devise would fail and the property go to the Peabody Institute as residuary devisee.

We have not undertaken to define a public park. A city, with a park system such as Baltimore has, needs no instruction or definition from us as to what constitutes a public park. What we do say is that a lot of neighborhood playgrounds is not a public park, and the purchase of them will not gratify the testator's intention. Whether they are more desirable or would serve a more useful public purpose is not for us to decide.

*Decree affirmed, with costs.*