917 A.2d 1122

**Shelley RODEHEAVER**

v.

**STATE of Maryland et al.**

**No. 2034, Sept. Term, 2005.**

Court of Special Appeals of Maryland.

March 6, 2007.

Jason C. Buckel (S. Ramani Pillai, on brief), Cumberland, for appellant.

Joseph P. Gill (Saundra K. Canedo, J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Panel HOLLANDER, KRAUSER and PAUL E. ALPERT, (Ret'd Spec. Assigned), JJ.

KRAUSER, J.

In his will, John Ellwood Hinebaugh left a substantial parcel of land, known as "Friend's Delight," to his friends Donald and Charlotte Sebold, provided, among other things, they did not alienate their interest in the property and continued to farm it. If they either did not comply with the terms and conditions of the devise or disclaimed the devise, the property was to pass, under the will, to the State of Maryland, "subject to the same conditions and covenants."

When the Sebolds did disclaim the devise, the State filed a complaint for declaratory judgment in the Circuit Court for Garrett County requesting that the alienation provision of the will be declared "invalid" and the farming provision "unenforceable." Among those opposing the State's action were Donald Sebold, the executor of the will, and appellant Shelley Rodeheaver, a residuary beneficiary whose request to intervene was granted.

The State then filed a motion for summary judgment. The circuit court granted the motion, rendering the declaratory relief requested by the State. Although acquiescing in the circuit court's ruling that the alienation provision was "invalid," appellant maintains on appeal that the circuit court erred in finding that the condition on the devise of Friend's Delight to the State, namely that the property continue to be farmed, was "unenforceable."[1] For the reasons that follow, we shall affirm the judgment of the circuit court.

## BACKGROUND

In his will, Hinebaugh devised Friend's Delight, together with the Sang Run Community Park, to the Sebolds:

"M. 1.) I give, devise and bequeath to Donald Sebold and Charlotte Sebold, husband and wife ... all that realty ... known as Friends' [sic] Delight ... together with ... the Sang Run Community Park."

That devise required the Sebolds to continue to farm[2] Friend's Delight and prohibited them from "leas[ing] it or otherwise alienat[ing] their interest in it." "[A]ll these condi-

---

1. In her brief, appellant also argued for the enforceability of another "condition of use" on another property known as the Sang Run Community Park, that is, that it be maintained in its "current character and use" for the benefit of the community. But since neither the State nor appellant questioned the validity of the Sang Run Community Park provision in the proceedings below, we decline to address it now. Maryland Rule 8–131(a).

2. "Farm" is "as defined in the Maryland Annotated Code, Labor and Employment Article, § 7–101(e)."

tions," the will averred, "shall be covenants running with the land."

The will further declared that, "[u]pon the death of the last" of the Sebolds or "in the event that they . . . disclaim[ed] the above [devise]" or "breach[ed] or fail[ed] to observe any of the above conditions and covenants," the property passed, "subject to the same conditions and covenants," to the State of Maryland, adding that "said conditions [were] covenants running with the land." The will also contained a residuary clause leaving to five residuary beneficiaries, among them appellant, the "rest and residue" of Hinebaugh's estate.

After Hinebaugh's death, the Sebolds' decision to disclaim that devise left the State with the question of whether, in accepting the property, it had to abide by the restrictions placed on the alienation and use of the property by the will. Troubled by what it considered an "unreasonable restraint on alienation" and fearful that the will provisions would "severely inhibit" its "choices in property management," the State filed a complaint for declaratory judgment requesting judicial declaration that the alienation provision was legally invalid and the farming provision legally unenforceable.

The State's complaint was initially opposed by the executor of the will, Donald Sebold, but he later withdrew his opposition after reaching a settlement with the State.[3] But appellant, a residuary beneficiary who, with the consent of all parties, was permitted to intervene, continued to oppose the relief requested by the State's complaint. Eventually, because there were no genuine disputes of material fact, the parties agreed that the matter should be resolved by summary judgment. The circuit court thereafter granted summary judg-

---

**3.** The State agreed that, upon acceptance of Friend's Delight, it would convey the property to the Friend Family Association subject to a conservation easement similar to one which had been imposed upon the property by the testator. Thereafter, the executor of his estate informed this Court that he "[would] be satisfied regardless of the outcome of the [a]ppeal" and did not file a brief or appear before this Court.

ment in favor of the State, holding the alienation provision "invalid" and the farming provision "unenforceable."

## DISCUSSION

Appellant contends that the circuit court erred in holding that the condition of Hinebaugh's will requiring the State to continue farming the property was unenforceable. Although the will does not expressly provide for a reversion or that the property will pass to a specific beneficiary if the State fails to abide by that condition, appellant nonetheless argues that if the State fails to farm the property, the property will devolve to her and the other residuary beneficiaries. We disagree.

"In reviewing a circuit court's grant of summary judgment, we look to whether a dispute of material fact exists. We also seek to determine whether the court was legally correct." *Deboy v. City of Crisfield*, 167 Md.App. 548, 554, 893 A.2d 1189 (2006) (citations removed). Because there is no genuine issue of material fact here, we need only determine whether the court was "legally correct." We so find.

Under Maryland law, a grantor can place conditions and restrictions on the use of the granted property. *See, e.g., Rogers v. State Roads Commission*, 227 Md. 560, 564–65, 177 A.2d 850 (1962). Such conditions and restrictions, however, are disfavored because the law favors "the free transfer of land," *Middleton Realty Co. v. Roland Park Civic League*, 197 Md. 87, 93, 78 A.2d 200 (1951), as well as "the natural right which an owner possesses to use and enjoy his property," *Norris v. Williams*, 189 Md. 73, 76, 54 A.2d 331 (1947).

Particularly disfavored are conditions subsequent, whereby the grantor "designates some event which may cut short [an] estate before it reaches its ... regular expiration or predetermined end." *Brown v. Hobbs*, 132 Md. 559, 563, 104 A. 283 (1918).[4] They are viewed with disapproval because

---

4.  Conditions subsequent are "created by such words as 'on condition[,]' 'provided,' 'so that,' etc." *Brown*, 132 Md. at 563, 104 A. 283.

"the breach of such a condition causes a forfeiture and the law is averse to forfeitures." *Gray v. Harriet Lane Home for Invalid Children,* 192 Md. 251, 264, 64 A.2d 102 (1949). In fact, so disfavored are these conditions that the Court of Appeals has declared that a will shall not be "construed to create an estate on condition [subsequent]" unless "the intent of the grantor to make a conditional estate is otherwise clearly and unequivocally indicated." *Sands v. Church of the Ascension and Prince of Peace,* 181 Md. 536, 542, 30 A.2d 771 (1943). That means that testamentary language purporting to create such a condition must clearly state that "the grant is ... void if the condition is not carried out" or "clearly indicate" the grantor's intention "that the property is to revert to him" or to pass to another party if the property is "diverted from the declared use." *Gray,* 192 Md. at 264, 64 A.2d 102. *See also Sands,* 181 Md. at 542, 30 A.2d 771. Otherwise, the condition "merely expresses the grantor's confidence that the grantee will use the property so far as may be reasonable and practicable to effect the purpose of the grant." *Id.*

Although the farming provision at issue may have created a condition subsequent as to the Sebolds—because it specifically provided that if the Sebolds breached the farming provision, the property would pass to the State—it did not create such a condition with respect to the State upon its acceptance of the bequest. *See Gray,* 192 Md. at 264, 64 A.2d 102. For while the property passed to the State "subject to the same conditions and covenants" as it did to the Sebolds, this language does not indicate that, if the State does not comply with the farming provision, the grant to the State is void or the property will revert to Hinebaugh or pass to another party. *See id.* In fact, the will does not indicate in any way what is to happen to the property should the State cease to farm the property. Thus the language of the devise, we conclude, expresses no more than Hinebaugh's confidence that the State would "use the property so far as may be reasonable and practicable to effect the purpose of the grant," that is to farm the property. *Sands,* 181 Md. at 542, 30 A.2d 771.

Appellant does not agree. She argues that the farming provision is enforceable because the property is otherwise "redirected" to the residuary beneficiaries in the event the State fails to comply with the farming provision. To buttress her claim, appellant cites two cases: *Mayor and City Council of Baltimore v. Peabody Institute of Baltimore*, 175 Md. 186, 200 A. 375 (1938), and *Gray*. In *Peabody*, the testator's will stated: "I leave to the Mayor and City Council of Baltimore the properties 101–103 N. Howard Street. 113–115 W. Fayette St. Five years after my decease, the said properties to be sold and the proceeds invested in a public park." 175 Md. at 188, 200 A. 375. The city asked the circuit court to construe the devise to permit it to buy "a number of small units of land" to form "several playgrounds," rather than one single lot of land to form a park. *Id.* at 188–89, 200 A. 375. The circuit court declined to do so. *Id.* at 189, 200 A. 375. Affirming the circuit court's decision, the Court of Appeals stated that the city "[had] to decide now ... whether it [was] going to accept the gift with the condition" and, if it was "not willing" to do so, the "devise would fail and the property go to the Peabody Institute as residuary devisee." *Id.* at 193, 200 A. 375.

■ But the question posed by the city, and addressed by the Court, was not whether the park provision created a condition subsequent. It was whether the city, under its charter, was "restrained in the application" of the funds from the sale of the property to the purpose described in the devise or if it could "divert [the funds] to any purpose ... within its corporate powers." *Id.* at 190–192, 200 A. 375. In fact, the Court specifically declined to address the city's argument that it "would not be accountable for a diversion of the gift" because there was "no condition subsequent in the devise or provision for a reversion or defeasance in case of a diversion," stating "[t]his question we think is premature now, as the question may never arise." *Id.* at 192–93, 200 A. 375. *Peabody* therefore does not bear directly on the question before us.

In *Gray*, the other case upon which appellant relies, the testator bequeathed to the Harriet Lane Home for Invalid Children of Baltimore City ("Home") her estate "as . . . endowment fund[s] for the use and benefit" of two "open wards" for the treatment of contagious disease: one for the treatment of diphtheria and the other for scarlet fever. 192 Md. at 256, 261, 64 A.2d 102. The funds were to be used for, among other things, "the care and treatment of deserving free patients" in those two wards "to the end that two-thirds (2/3) of the number of beds in each of the said two wards . . . shall be used for the reception, care and treatment of free patients." *Id.* at 256, 64 A.2d 102. In response, the Home filed a bill of complaint asking the circuit court to decree the "absolute distribution of the funds . . . to the Home" and to "fix[ ] the purposes . . . the places . . . and the method in which said funds may be used." *Id.* at 255, 64 A.2d 102. The circuit court, "[a]lthough not confining the use" of the funds "literally to [the] immediate purposes set out in the [testator's] will," did order "certain limitations," unspecified, on the Home's use of the funds. *Id.* at 258, 64 A.2d 102.

Before the Court of Appeals, the Home argued, among other things, that the purposes laid out in the will were not conditions subsequent and that it was therefore not restricted by those purposes in the use of the endowment funds. *Id.* at 258, 271, 64 A.2d 102. It also pointed out that, in view of the "changed circumstances in the treatment of diseases," such a restriction "would involve waste and impair the fulfillment of the [testator's] general intention." *Id.* The Court of Appeals agreed. *Id.* at 269–71, 64 A.2d 102. Affirming that "[c]onditions subsequent are not favored in the law," especially where there is no "gift over" or "words indicating an intent that the grant is to be void if the condition is not carried out," the Court of Appeals held that the purposes set out in the will were not conditions subsequent, and hence it was "not mandatory" for the Home to use the funds for only those purposes. *Id.* at 264, 271, 64 A.2d 102.

In so holding, the *Gray* Court distinguished *Peabody* based in part on the lack of a residuary clause in the *Gray* will. *Id.*

at 268, 64 A.2d 102. The Court stated that the testator "could have included in her will a forfeiture clause or 'gift over' in the event the Home did not strictly comply with the will" but "did not do so," pointing out "[t]here is no residuary clause in this will." *Id.* at 270–71, 64 A.2d 102.

But it further observed that, in *Peabody,* "a time limit was provided," while "[h]ere the gift is in perpetuity." *Id.* at 268, 64 A.2d 102. Moreover, it noted, there were "changed circumstances in the treatment of diseases" which made "the use of the gift impracticable under new conditions which the testator had not contemplated." *Id.* at 268, 271, 64 A.2d 102. Since the testator "must have known that change in economic conditions and change in medical care would greatly affect a gift and endowment in perpetuity," the fact that she made no other provision for the use of her funds in the event the Home failed to carry out the stated purposes in her will pointed to the conclusion that she did not intend to "[make] her stated purposes mandatory." *Id.* at 270–71, 64 A.2d 102.

Similarly, in the instant case the gift is in perpetuity, and Hinebaugh must have known that, over time, changes in economic and other conditions would greatly affect the property and might make the continuation of the property as farmland impracticable. Thus, even though he included a general residuary clause, the fact that he made no express provision for the property in the event the State fails to farm it leads to the conclusion that he did not intend to make the farming condition mandatory.

More importantly, appellant's interpretation of *Gray,* which would allow Friend's Delight to pass directly to her and the other residuary beneficiaries, runs afoul of a post-*Gray* case, *McMahon v. Consistory of St. Paul's Reformed Church,* 196 Md. 125, 75 A.2d 122 (1950). In *McMahon,* the will at issue devised property to the Consistory of St. Paul's Reformed Church ("Church") on, among other conditions, the condition that the "income and rents" from the property would go "solely to the payment of the salary of . . . [the] pastor" of the Church. *Id.* at 130, 75 A.2d 122. The will further provided

that, "should said income and rents be at any time used for or applied to any other purpose than the one herein specified," the devise to the Church "shall at once become void" and the property would then "immediately vest absolutely in my said three children in fee simple." *Id.*

Desiring to sell the property and to invest the proceeds, "the income arising from such investment" to be used to pay the pastor's salary, the Church filed a bill of complaint seeking the court's permission to do precisely that. *Id.* at 131, 75 A.2d 122. The residuary devisees of the testator's three children objected and sought a different interpretation of the testamentary provisions at issue. *Id.* They maintained that such a sale would violate the terms of the will. *Id.* In such an event, they claimed that, under the terms of the will, the property would revert to the estate and pass thereby to the "three children" as the testator's heirs. *Id.*

Siding with the Church, the Court of Appeals declined to find for the residuary devisees. *Id.* at 135, 75 A.2d 122. It stated that, since the Church "assert[ed] its intention to comply" with the terms of the will by "applying the income ... solely to the payment of the salary of the ... pastor," it could sell the property. *Id.* at 132, 75 A.2d 122. It further asserted that, in any case, the residuary devisees could not receive the property even if the Church did not apply the income to the pastor's salary. *Id.* at 134-35, 75 A.2d 122. The devise created, it explained, a "limitation over" to the three children rather than a reversion to the testator's estate, and this limitation over violated the rule against perpetuities. *Id.*

The implication of *McMahon* is that a will creates a "limitation over," [5] 196 Md. at 134, 75 A.2d 122, or "gift over," [6] *Gray,*

---

5. A "limitation over" is an "additional estate created or contemplated in a conveyance, to be enjoyed after the first estate expires or is exhausted." *Black's Law Dictionary* 939 (7th ed.1999).

6. A "gift over" is a "property gift ... that takes effect after the expiration of a preceding estate in the property." *Black's Law Dictionary* 697 (7th ed.1999).

192 Md. at 264, 64 A.2d 102, to another party only if the will specifically names that party as a beneficiary in the event a condition of the devise is not complied with by the original beneficiary. *See McMahon,* 196 Md. at 132–34, 75 A.2d 122. Thus a general residuary beneficiary, who is not specifically named as the beneficiary in the event the original beneficiary fails to comply with a condition of the devise, cannot obtain the devised property directly as a "gift over," although he or she could inherit the property after it first reverts to the estate. *See id.*

In the case at bar, the will does not specify that the property would pass directly to the residuary beneficiaries in the event the State fails to comply with the farming provision. Hence residuary beneficiaries, such as appellant, can only receive Friend's Delight after it first reverts to Hinebaugh's estate.

But there is no language in Hinebaugh's will "clearly indicat[ing] . . . [his] intention that the property is to revert to him" if the property is "diverted from the declared use." *Gray,* 192 Md. at 264, 64 A.2d 102. And, without such language, the property does not revert to the estate even if the original beneficiary fails to comply with the stated condition. *Id.* at 264, 268–69, 64 A.2d 102. Because, under the will, there can be no reversion of Friend's Delight to Hinebaugh's estate even if the State ceased to farm the property, the property cannot devolve, through a reversion, to appellant and the other residuary beneficiaries. And because there is no one else to whom, under the terms of the will, the property can devolve, the farming provision is unenforceable. *See McMahon,* 196 Md. at 135, 75 A.2d 122.

Interpreting a general residuary clause so that it does not operate as a direct "gift over" of the property, if the original beneficiary fails to comply with the conditions of a devise, is in keeping with the weight of authority. *See, e.g., Wilbur v. University of Vermont,* 129 Vt. 33, 270 A.2d 889, 896 (1970) (residuary beneficiaries can take under a will only through a reversion to the testator's estate); *Brown v. Independent*

*Baptist Church of Woburn,* 325 Mass. 645, 91 N.E.2d 922, 924 (1950) (on breach of the condition, the general residuary beneficiaries received the land through the operation of the reversionary interest known as the possibility of reverter); *First Presbyterian Church of Salem v. Tarr,* 63 Ohio App. 286, 26 N.E.2d 597, 602 (1939) (the residuary beneficiaries were not entitled to the property in part because there was no "provision for reverter in case [the] [specified] use [was] not made"); *Isanogel Center, Inc. v. Father Flanagan's Boy's Home Inc.,* 839 N.E.2d 237, 245 (Ind.Ct.App.2005) (the Boy's Home, as general residuary beneficiary, was not entitled to the property in part because of the "absence of clear reverter language").

To bolster her claim that she and the other residuary beneficiaries should directly receive the property, appellant cites Md.Code (1974, 2001 Repl.Vol.), § 4–404(a) of the Estates and Trusts Article, which states, in part, that "property failing to pass under a void or inoperative legacy ... shall be distributed as part of the estate of the testator to those persons ... who would have taken the property if the void or inoperative legacy had not existed." But this statute is only applicable "when there is not another rule addressing the proper devolution of a particular [devise]" and the devise will otherwise fall into intestacy. *Gallaudet University v. The Nat'l Society of the Daughters of the American Revolution,* 117 Md.App. 171, 184–85, 699 A.2d 531 (1997). That is not the case here. If the farming provision is unenforceable, the property does not fall into intestacy but becomes the property of the State, as the will instructs, subject to any provisions not declared to be unenforceable. *See Brown,* 132 Md. at 566, 104 A. 283; 22 M.L.E. Wills § 203 (2000).

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**