CARTER ET AL. *v.* MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.

[No. 113, October Term, 1950.]

*Decided January 12, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Willis R. Jones*, with whom were *A. Risley Ensor* and *John K. Barbour, Jr.*, on the brief, for the appellants.

*Lloyd G. McAllister, Assistant City Solicitor of Baltimore,* and *C. Keating Bowie,* with whom were *Thomas N. Biddison, City Solicitor,* and *Issac Hecht* on the brief, for the appellees.

GRASON, J., delivered the opinion of the Court.

This appeal presents for review a decree of the chancellor below wherein he "Ordered, adjudged and decreed

that the Amended Bill of Complaint in the above entitled case be dismissed, costs to be paid by Complainants". The case was submitted on the amended bill and answers. The prayers of the amended bill are as follows: a. That the resolution of the Board of Estimates of Baltimore City, passed on the 26th day of July, 1950, authorizing the closing of the branch library of the Enoch Pratt Free Library at Smith and Greeley Avenues, in Baltimore City, and to transfer the use of said land and building to the Board of School Commissioners, be declared to be void and of no effect. b. That the land and building situated on Smith and Greeley Avenues, now and heretofore occupied as a branch of the Enoch Pratt Free Library, be declared to be impressed with a trust which restricts the use of said land and building by the defendants for the purpose of a branch library of the Enoch Pratt Free Library. c. That the Board of Trustees of the Enoch Pratt Free Library be permanently enjoined and restrained from closing the branch library situated as aforesaid, so long as funds are appropriated by the Mayor and City Council for the maintenance of said library. d. That the Board of School Commissioners of Baltimore City be enjoined and restrained from transferring any of its funds to the Board of Trustees of the Enoch Pratt Free Library for the use of the land and building situated at Smith and Greeley Avenues, in the City of Baltimore, for school purposes, and from altering or remodeling said building, and from interfering in any manner with the operation of the said land and building as a branch library.

The material facts as stated in the amended bill are as follows: That by deed dated the 31st day of October, 1919, Walters and Buckley, Trustees, and others, granted and conveyed certain property unto the Mayor and City Council of Baltimore. The consideration for this deed was $4,500.00 Upon a part of that land a branch library of the Enoch Pratt Free Library was erected, and has been used as such from the time of its erection until the time of the filing of this amended bill, and is at

present so used. The habendum clause in the aforesaid deed is as follows: "To have and to hold the lot of ground and premises above described and mentioned, and hereby intended to be conveyed, together with the rights, privileges, appurtenances and advantages thereto belonging or appertaining, and unto the use of the said Mayor and City Council of Baltimore, its successors and assigns, in fee simple, in trust for the Enoch Pratt Free Library of Baltimore City, for the corporate purposes according to the true intent and meaning of its Charter, and provided that the Mayor and City Council of Baltimore aforesaid, and the Enoch Pratt Free Library of Baltimore aforesaid, may by joint deed sell and convey the said above described lot of ground with the improvements thereon, * * * and the proceeds of sale shall be paid to the Enoch Pratt Free Library of Baltimore City aforesaid, to be invested by it with the approval of the Mayor and City Council of Baltimore in other property for the purposes of this trust, the legal title to such other property to be vested in the Mayor and City Council of Baltimore aforesaid * * *."

The consideration for this deed, namely, $4,500.00, was made up as follows: $2,250.00 was appropriated by the Mayor and City Council, and $2,250.00 was donated by David T. Carter, Mabel Carter, John M. Carter, and Herbert Bagg, heirs of John M. Carter, deceased. The proceeds for the erection of the Branch Library building were appropriated by the Board of Trustees of the Enoch Pratt Free Library from the gift made in 1907 by the late Andrew Carnegie to the said Library. That the Trustees of said Library intend to discontinue the use of said Branch Library and to sell the same to the Board of School Commissioners of Baltimore City for the sum of $20,000.00, to be used by said Board for the purpose of a school, the proceeds of said sale to be used by the said Trustees in the erection of a modern branch library located in Pimlico, Baltimore City; that the Board of Estimates, on the 26th day of July, 1950, approved the proposed sale to the Board of School Commissioners

of Baltimore City, with certain reservations which have been met; that the City Council of Baltimore, in the year 1948, denounced a proposed sale of said property, for various reasons we need not here set out, and resolved: "That it is the opinion of this body that the public library operated in the community of Mt. Washington should not be closed or have its facilities curtailed in any further degree, * * *." It is further set out in the bill that the complainants, David T. Carter, Mabel Carter and John M. Carter, would not have made the contribution for the acquisition of the site upon which the branch library is established, had they known that the use of said building would be diverted for the use as a school house, as now proposed, as it was their intention and purpose to not only establish a suitable memorial to the memory of the late John M. Carter, but also to assist in providing a branch library for the benefit of the people of the community in which they reside. There are two plaques on said building. One is:

"The Enoch Pratt Free Library
Branch No. 21
The acquisition of the site for
this branch was made possible by
the family of the late John M. Carter
Anno domini 1920"

The other is:

"The Enoch Pratt Free Library
Branch No. 21
This building was erected
Anno domini 1920
from the fund
given by
Andrew Carnegie"

The amended bill further alleges that the proposal by the Trustees of the Library, as approved by the Board of Estimates, is a breach of the discretion of the Trustees, arbitrary and void; that a deed from the Trustees, approved by the Board of Estimates, would

be illegal and void, and that in order to transfer the property in said Branch Library to the Board of School Commissioners it would require an ordinance duly passed by the City Council and signed by the Mayor, authorizing such sale, and no ordinance has been passed.

The Carter heirs, together with a number of residents of Mt. Washington, bring this amended bill.

The Mayor and City Council of Baltimore, the Board of Estimates of Baltimore City, the Board of Trustees of the Enoch Pratt Free Library, and the Board of School Commissioners of Baltimore City filed a joint answer to said amended bill. The answer admits the proposed sale, and that no ordinance has been passed authorizing said sale, and submits to the court "the legal question whether an ordinance is required to authorize the sale as aforesaid". The answer further sets out that the Branch Library in question is old, that the books contained therein are antiquated, and that it contains practically no books that deal with technical subjects; that it now serves principally certain schools in its vicinity, and that it is proposed to substitute a bookmobile, which would supply to said schools up-to-date books, as the teachers desire; that no call at said Branch Library is made for technical books; that the price offered of $20,000.00 for said Library is a fair and reasonable price; that it is now building a modern branch library at Pimlico, about one and one-half miles from the location of the Branch Library in question, which will supply all demands in the neighborhood for not only new and up-to-date books, but for books dealing with technical subjects; that the purchase price is to be used in the construction of the proposed Pimlico Branch Library. Other individual taxpayers answered the amended bill, whom it is not necessary to refer to in this case.

The appellants pose two questions: 1. "Have the Defendant Officials the authority to discontinue the use of the Mt. Washington Branch of the Enoch Pratt Free Library for library purposes and to transfer its use to the Board of School Commissioners for school purposes?"

2. "If such authority exists, is an ordinance of the Mayor and City Council necessary?"

The appellees state: "The only question involved in this case is the sufficiency of the procedure adopted to transfer to the Mayor and City Council of Baltimore the interest of the Library Corporation in the Library property in Mount Washington."

It will not be necessary to go into the history of the Enoch Pratt Free Library and the Carnegie gift. This has been very thoroughly set out in *Kerr v. Enoch Pratt Free Library,* D. C., 54 F. Supp. 514, to which we refer.

The gift of the heirs of the late John M. Carter to the City of Baltimore for the purpose of buying the ground upon which the Branch Library was built, does not constitute a trust that would prevent the sale of the property in question. We do not for one moment suppose that these heirs, at the time they donated this money, had any idea that the building to be erected upon the land would be forever a monument to Mr. John M. Carter. The deed by which the property was acquired by the City presupposes that a sale of the property might sometimes be advisable, for in the *habendum* clause it is provided that the Mayor and City Council and the Enoch Pratt Free Library may by joint deed sell and convey the said property. If A. made a contribution to the City for the purpose of buying property upon which to erect a library, and after the library was built a plaque was put on the building stating that A. made the contribution, it would be preposterous to hold that the property was impressed with a trust to maintain the building erected, with the plaque attached, in memory of A. who made the contribution. Even if the deed which conveyed the property to the City did not in express terms contemplate a sale in the future, the City and the Trustees could sell the same because the money donated by the Carter heirs to the City was a mere gift.

We think that the sole question in this case is whether the property concerned can be sold without the authority

of an ordinance duly passed by the City Council and signed by the Mayor.

The Enoch Pratt Free Library of Baltimore City is a corporation. It holds all of the property of said Library in trust for the purpose of management and control. Its authority for that purpose is only limited by an arbitrary or illegal act, and if an act done by it is not arbitrary or illegal its discretion in the matter is final.

In 1907 Mr. Carnegie offered to give to the Mayor and City Council of Baltimore $500,000 for the erection of twenty branch buildings for the use of the Enoch Pratt Free Library of Baltimore City. That gift was accepted and duly consummated. Mr. Carnegie would not have donated such a large sum to Baltimore City for the use of the Library unless he thoroughly knew of the set up of the trustees under the Act of 1882, Chapter 181. He intended that the Trustees of the Enoch Pratt Free Library manage and control that gift for the use of a free library, just as Mr. Pratt intended his gift.

The trust reposed in the Trustees of the Library is not a passive trust which is executed by the statute of uses, as contended by the appellees. On the contrary, it is a very active trust, for the Trustees manage and control a free library for the City of Baltimore.

The case of *Rogers v. Sisters of Charity,* 97 Md. 550, 554, 55 A. 318, 319, does not sustain the appellees. It is there said: "* * * for if the duties create a *special or active trust* in the feoffees, the uses in respect of which such duties are required to be performed are not within the purview of the statute, and remain unexecuted and are mere trusts, and constitute equitable estates in the *cestui que trust,* the legal estate remaining in the feoffees."

We do not agree with the appellees that by the phrase in the deed: "to the Mayor and City Council of Baltimore, in trust for the Enoch Pratt Free Library", as construed in the light of the original documents establishing the Library, no trust was intended to be created in the strict sense of the word. We have considered the history of

the Library, and the result of all transactions between Mr. Pratt and the City is that the gift of Mr. Pratt was conveyed to the City in trust for the Enoch Pratt Free Library. Evidently Mr. Pratt desired that the Trustees should have all the power and authority that the City would agree to. But the gifts of both Mr. Pratt and Mr. Carnegie were upon the condition that the City appropriate yearly to the Trustees a sum of money to be used by the Trustees in conducting the Library. Evidently the City authorities would agree to give the Trustees only such authority as is provided in the charter of the Enoch Pratt Free Library. Over the years the City has appropriated thousands of dollars to the Trustees for the use of the Library.

"To maintain and support the Enoch Pratt Free Library, or other free public libraries, art galleries and museums." Sec. 6 (15) Charter and Public Local Laws of Baltimore City, 1949. See Acts 1882, Chapter 181.

By section 597 of the City Charter it is made the duty of the Mayor to appoint a visitor who shall, as often as once a year, examine the books and accounts of the Trustees of the Enoch Pratt Free Library of Baltimore City, and make a report to the Mayor and City Council of Baltimore, and the Mayor and City Council shall, in case of any abuse of their powers by said Trustees or their successors, have the right to resort to the proper courts to enforce the performance of the trust reposed in them. See Chapter 181, Acts 1882.

By the deed of July 2, 1883, Enoch Pratt and his wife conveyed the physical property of the completed library building to the Mayor and City Council of Baltimore, and in that deed it is provided that by joint action the City and Library could sell and convey the real estate held "for the purpose of the trust", the proceeds to be invested in other property for the same purposes. Thus it is perfectly plain that the City desired to accept the Pratt gift, but that it required the Trustees to report annually of their receipts and disbursements; it also required that the real estate should not be sold unless

it was agreed to by the City and the Trustees. The result was that the City held the legal title to all real estate and other property, and the Enoch Pratt Free Library held the equitable title in the property given to the City by Mr. Pratt. The City could not give the Trustees authority to sell real estate, for it could be, though highly improbable, that the Trustees would convey all of the Library property, notwithstanding that the City appropriated funds for its support, and thus defeat the purpose of Mr. Pratt in creating a free library for the City of Baltimore. It is clear that it was the intention that no real estate held by the Enoch Pratt Free Library could be sold unless the Trustees and the City joined in the deed.

In *Barnum v. Mayor*, etc., of City of Baltimore, 62 Md. 275, Mr. Barnum devised the residue of his estate to the Mayor and City Council of Baltimore, in trust, for the McDonogh Educational Fund and Institute. Mr. McDonogh devised certain property to the City. This property was administered by the City under an agency it created, known as the Board of Trustees of the McDonogh Educational Fund and Institute. It was held in that case that the City had a right to receive the fund and to administer it through said agency.

In the case at bar the gift was received by the City, in trust, for the Enoch Pratt Free Library, an incorporated body, and administered by Trustees set up in the act of incorporation. It would seem that if the City has power to receive a gift and set up an agency for the purpose of administering the gift, surely the City could receive a gift to be administered as it did in the case at bar.

In *Hanlon v. Levin*, 168 Md. 674, 179 A. 286, 287, the City leased a part of one of its parks for the purpose of erecting thereon a broadcasting tower. The court enjoined such action and it was said in that case: "However, it must not be overlooked that municipal corporations have only such powers as have been conferred upon them by the Legislature, and these are to be strictly

construed. To doubt such power in a given case is to deny its existence."

In *Mayor & City Council of Baltimore v. Peabody Institute,* 175 Md. 186, 200 A. 375, Mr. J. Wilson Leakin, by his will, left the Mayor and City Council of Baltimore certain properties, and provided that five years after his decease the properties were to be sold and the proceeds invested in a public park. The City claimed the right to use the proceeds to buy a number of small units of land located in different sections of the City, to be known as "The Leakin Park". This court held that the City could not do that. The property was devised to the City for the purpose of creating a park, and small tracts scattered all over the City did not constitute a park. It was there held that the trust could be enforced, that a court of chancery will prevent the misapplication of a trust fund, and compel the execution of the trust.

In *Kerr v. Enoch Pratt Free Library,* 4 Cir., 149 F. 2d 212, 217, it was said: "It is equally true that the state may set up a board of trustees as an incorporated instrumentality to carry on its educational work, as it has done in the case of the University of Maryland. * * * It is our view that although Pratt furnished the inspiration and the funds initially, the authority of the state was invoked to create the institution and to vest the power of ownership in one instrumentality and the power of management in another, with the injunction upon the former to see to it that the latter faithfully performed its trust. We know of no reason why the state cannot create separate agencies to carry on its work in this manner, * * *."

If under the deed from Pratt to the City the joint action of the City and the Library would be necessary to convey real estate means that it is necessary for the City to pass an ordinance to authorize the sale, then to allow a sale to be executed under a procedure that did not require an ordinance would be a divergence from the procedure authorized by the deed, and a sale under such procedure would be null and void.

It is contended that a sale of the trust property by the Trustees is not involved in this case, because the property will be conveyed to another agency of the City, to wit, the Board of School Commissioners of Baltimore City. If this could be done without an ordinance, the property of one agency of a City government could be transferred to another agency at any time it was thought proper to do so.

In the deed from Pratt and his wife to the City, referred to, it is provided that by joint action the City and Library could sell and convey the real estate held for the purpose of the trust.

" 'City' means the Mayor and City Council of Baltimore, the body corporate as established by Section 1." Section 2 (a), Charter and Public Local Laws of Baltimore City, 1949.

The Board of Estimates is not the City. When one thinks of the City he is not thinking of the Board of Estimates, so when it was provided in the aforesaid deed that a deed for real estate would require the joinder of the Trustees and the City, it was meant that an ordinance duly passed by the City Council and signed by the Mayor, authorizing the execution of the deed, would be required. By section 169, Charter and Public Local Laws aforesaid, it is provided: "Nothing contained in the Charter shall prevent the City from in any manner disposing of any building or parcel of land no longer needed for public use; provided, that such disposition shall be authorized and provided for by ordinance, and shall be approved by the Board of Estimates, * * *."

We think that it was the intention of Mr. Pratt and the City authorities that an ordinance should be required authorizing the sale of any of the trust property, and that the procedure proposed by appellees to sell the property in question is illegal.

In the deed from Walters and Buckley, Trustees, et al., to the City, which conveyed the land upon which the Branch Library in question was erected, it is provided in the *habendum* clause that "the Mayor and City Council

of Baltimore aforesaid, and the Enoch Pratt Free Library of Baltimore aforesaid, may by joint deed sell and convey the said above described lot of ground". We are of opinion that the language used in this deed would require the authorization of an ordinance to sell it. It is not, however, to be construed from anything in this opinion that we are intimating that the City may interfere with the management and control of branch libaries.

The right of the plaintiffs to maintain this amended bill was raised in the argument of this case. It is claimed that none of the plaintiffs will be harmed personally—that is different from the public, by the action proposed. Nevertheless, three of the Carter heirs who contributed towards the purchase of the ground upon which the Branch Library is located are parties plaintiffs to the amended bill. They contend that this ground is impressed with a trust. They had a right to raise that question in a court of equity, and to have determined whether or not the trust property, as they contended it was, could be diverted from the purposes of the trust. *Barnum v. Mayor, etc., of City of Baltimore, supra.*

The fact that we do not agree with their contention does not affect their right to have the matter determined.

For the reasons given, the decree in this case must be reversed and a decree entered in accordance with this opinion.

*Decree reversed, with costs, and case remanded for the entry of a decree in favor of appellants.*

MARKELL, J., delivered the following dissenting opinion.

Title to the Mt. Washington branch library building of the Pratt Library, like the other branch buildings and the main library itself, is held by the City, in express trust for the Library (a corporation). By the terms of the trust the City and the Library "may by joint deed sell and convey" the land, with the improve-

ments, and "the proceeds of sale shall be paid to the * * * Library * * * to be invested by it with the approval of the * * * City * * * in other property for the purposes of this trust, the legal title to such other property to be vested in the * * * City * * *." The original Pratt gift, and likewise the Carnegie gift were expressly accepted by the City by ordinance. The question presented to us is whether this express power of sale must be exercised only by an ordinance of the City. No such requirement is to be found in the terms of the trust, in the charter of the Library or the City Charter or any City ordinance. Nor do the purposes of the trust furnish any reason for such a requirement.

Section 3 of the City Charter provides, "The City may receive in trust, and may control for the purposes of such trust, all moneys and assets which may have been or shall be bestowed upon it by will, deed or any other form of gift or conveyance in trust for any corporate purpose, or in aid of the indigent poor, or for the general purposes of education or for charitable purposes of any description. All such trust funds now held or subsequently received shall be administered with respect to investment and reinvestment, subject to any limitations in the trust, by the Commissioners of Finance." Baltimore City Charter (1949 Ed.), sec. 3. Code of 1860, P. L. L., Art. 4, sec. 2; Code of 1888, Art. 4, sec. 2. The first sentence just quoted orginated in Chapter 86 of the Acts of 1842. *McDonough v. Murdock*, 15 How. 367, 412-413, 14 L. Ed. 732; *Barnum v. Mayor, etc., of City of Baltimore,* 62 Md. 275, 293-295. The sentence last quoted originated in the New Charter adopted in 1946, effective in 1947. Though this express power to hold in trust is, to some extent, declaratory of previous implied powers of the City, it may be not altogether declaratory. It may have conferred powers to hold on trusts which, without such statutory authority, could not have been validly created before the charitable uses act of 1931. *Barnum v. Baltimore, supra,* 62 Md. at pages 294-295; Code, Art. 16, sec. 279. Before 1946

the administration of trusts was not put in charge of any particular City instrumentality. Since 1946 this power and duty has been imposed upon the Commissioners of Finance, "subject to any limitations in the trust". The Mayor "shall see that the ordinances and resolutions are duly and faithfully executed", and "shall have general supervision over all municipal officers and agencies." Baltimore City Charter (1949 Ed.), sec. 10. If these general powers of the Mayor are not sufficient for the purpose, the powers of the Commissioners of Finance are clearly adequate for them to join, or request and authorize the Mayor to join, in the execution of a deed under the express power conferred by the terms of the trust.

Section 169 of the Charter provides, "169. Property—*Sale or Lease.* Nothing contained in the Charter shall prevent the City from in any manner disposing of any building or parcel of land no longer needed for public use; provided, that such disposition shall be authorized and provided for by ordinance, and shall be approved by the Board of Estimates, which approval shall be evidenced by the execution of the conveyance thereof by a majority of said Board, and shall be made at public sale, unless a private sale be expressly authorized by the Board of Estimates and so entered on their minutes. Unless otherwise provided by ordinance, the Comptroller is authorized to lease such property not needed for public purposes on a month to month basis. He is authorized to lease such property for fixed terms provided such leases are first approved by the Board of Estimates." It is not necessary to express any opinion as to whether the City and the Library, in a proper case, have express or implied power to lease Library property temporarily. It is clear that the provisions as to leasing, and likewise the other provisions of section 169 relate only to municipal property and not to trust property.

There is no basis (a) for assuming that Mr. Pratt and the City bargained, he to obtain the largest possible powers for the Library, the City to give the narrowest

possible powers or (b) to read into the trust a limitation that the power of sale can be exercised only by ordinance of the City. The largest reasonable interpretation of the City's power and duty to "join" in a deed is that the City has the duty and power to refuse to join in a deed which is contrary to the purposes of the trust, not that the City has power to interfere with the judgment of the Library in the conduct of its affairs, including the disposition of a branch library building or change of location of a library. For reasons that had their origin in the feudal system, are now obsolete and have been superseded, largely by statute and generally by the terms of modern trust instruments, like those now before us, the courts were slow to imply a power of sale of real estate, even from a broad power of management. No such question of construction is presented by the broad provisions of this express trust. There is no indication of any intention on the part of the City, the State (in incorporating the Library), Mr. Pratt or Mr. Carnegie that the location of branch libraries, or any other part of the management of the Library, should be determined by ordinance of the City. There is no more reason why the location of a branch library should be determined by ordinance than that the question whether or not "Forever Amber" or any of thousands of other books, new or old, shall be acquired or retained by the Library. The City has appropriated millions for the Library, but there is no reason to think that the City would prefer to have its millions managed by ordinance rather than by the constituted authorities, the Library itself. The City Council is not the City.

I think the decree should be affirmed.