CARTER ET. AL. *v.* CITY OF BALTIMORE ET AL.

[No. 168, October Term, 1950.]

*Decided April 11, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Willis R. Jones,* with whom were *A. Risley Ensor* and *John K. Barbour, Jr.,* on the brief, for appellants.

*C. Keating Bowie, Jr.,* with whom were *Isaac Hecht, Thomas N. Biddison, City Solicitor of Baltimore,* and *Lloyd G. McAllister, Assistant City Solicitor,* on the brief, for appellees.

DELAPLAINE, J., delivered the opinion of the Court.

This is the second appeal in the injunction suit brought by John M. Carter and other taxpayers to restrain the Mayor and City Council of Baltimore and the board of trustees of the Enoch Pratt Free Library of Baltimore City from closing the branch library in the Mt. Washington section and from transferring the use of the building to the Board of School Commissioners.

The Pratt Library was incorporated by Act of the Maryland Legislature in 1882, after Enoch Pratt, a resident of Baltimore, had offered to build a free library on Mulberry Street at a cost of $250,000 and to convey it when completed to the City of Baltimore, and also to give $833,333.33 on condition that the City would agree to pay $50,000 annually to a board of trustees for the maintenance of the Central Library and not less than four branches. The Act empowered the Mayor and City Council to accept the offer and to agree by ordinance, subject to the approval of the voters of the city, to make the stipulated annual payment. The Act made provision for a board of trustees with authority "to do all necessary things for the control and management of said library and its branches." It directed that the trustees shall make an annual report of their proceedings and of the condition of the library and its branches, with a full account of the moneys received and expended by them. It also provided that, in case of any abuse of the powers

of the trustees, the Mayor and City Council shall have the right to resort to the proper courts to enforce the performance of the trust. Laws of 1882, ch. 181.

In 1883 Mr. Pratt and his wife deeded the Central Library to the Mayor and City Council. The deed authorized the City and the Library, by joint action, to sell and convey the real estate "for the purposes of the trust," the proceeds to be invested in other property for the same purposes.

In 1906 James A. Gary, president of the board of trustees, wrote a letter to Andrew Carnegie expressing the hope that he would feel disposed to render aid in the extension of library work in Baltimore. Mr. Carnegie replied that it would give him great pleasure to provide $500,000 for the City of Baltimore to erect twenty branch library buildings "conditioned on a resolution of Council agreeing to maintain free public libraries in the buildings at a cost of not less than 10 per cent of that of the buildings themselves; conditioned also on sites being found for the buildings by the city."

Mr. Carnegie explained in his letter that it was on those terms that he had furnished branch library buildings for New York, Philadelphia, St. Louis, Pittsburgh and other cities. He then added: "I have unusual pleasure in making this offer at your suggestion, remembering my dear friend, Enoch Pratt, whose donation to Baltimore for public libraries was one of the first that came to my notice. . . . I trust that the branch libraries in Baltimore will be considered part of his scheme and not a new departure. The libraries should be called Enoch Pratt Branch Libraries."

On May 11, 1907, the Mayor and City Council passed an ordinance* accepting Mr. Carnegie's offer and agreeing to maintain the branch libraries "by a yearly provision in the tax levy of a sum not less than ten per centum of the amount given by said Andrew Carnegie for the construction of each of said buildings, such annual appropriation by the Mayor and City Council to be expended by said Trustees for the maintenance as

* Reporter's Note: Baltimore City Ordinances (1906-1907), No. 275.

aforesaid in such manner as may be specified from year to year in the Ordinance of Estimates."

Complainants alleged that the site for the Mt. Washington branch library was selected by the City and the library trustees in co-operation with relatives of John M. Carter, deceased. The site, which is located at Smith and Greeley Avenues, was bought by the City in 1919. The purchase price was $4,500, half of which was appropriated by the City, and the other half contributed by two children and two grandchildren of Mr. Carter. When the library was completed in 1920, two plaques were placed upon it, one stating that the building was erected from the fund given by Andrew Carnegie, the other that the acquisition of the site was made possible by the family of the late John M. Carter. Complainants contended that the trustees do not have exclusive authority to close the branch library, and that the property cannot be sold unless the sale is authorized by municipal ordinance.

On the contrary, the trustees claimed that their plan to sell the library is wise, not only because it will be for the benefit of the taxpayers of Baltimore, but also because it will provide better library service for the residents of Mt. Washington. The trustees reported that they had paid nearly $50,000 for a site for new branch library in the Pimlico section about a mile and a half from the Mt. Washington library, and they plan to build a library there costing more than $100,000, and to use the proceeds of the sale of the Mt. Washington library to help pay for the cost of construction. They asserted that the new library will serve a large number of patrons who have been using the Mt. Washington library, and that a bookmobile, which is a modern and efficient development in library service, will be stationed in the Mt. Washington section for a minimum of 21 hours a week until the Pimlico library is open.

The chancellor held (1) that the library trustees have the authority to decide whether a branch library should be closed, and (2) that no ordinance is necessary to

authorize the sale and conveyance of such property. The chancellor accordingly dismissed the suit, and the first appeal was from the decree.

On January 12, 1951, the Court of Appeals reversed the decree and remanded the case for the passage of a decree in favor of complainants. In the opinion of the Court, which was written by Judge Grason, we held: (1) that the Mayor and City Council holds the title to the Mt. Washington branch library in trust for the Pratt Library; (2) that a trust is reposed in the trustees of the Pratt Library to manage and control the branch library for the City of Baltimore, and their authority for that purpose is not limited except by illegal or arbitrary action; (3) that the fact that descendants of Mr. Carter contributed half of the cost of the library site does not prevent the Mayor and Council and the trustees from selling the property; and (4) that in order to convey the property an ordinance passed by the City Council and signed by the Mayor authorizing the execution of a deed would be required. *Carter v. City of Baltimore* 197 Md. 70, 78 A. 2d 212.

Before the passage of the decree, complainants filed a petition alleging that on January 18, 1951, the board of trustees adopted the following resolutions:

"*Whereas,* the Mt. Washington Branch of the Enoch Pratt Free Library has for a number of years been one of the least used branches in the system with respect to registration of patrons, circulation of books, and reference services, and approximately 40 per cent of its use has been by children; and

"*Whereas,* for a number of years the Trustees of the Library have felt that the Library patrons of Mt. Washington can be better served by bookmobile and by collections of children's books placed in the classrooms of all schools in the proximity of the library;

"*Whereas,* at a hearing held by the Library Trustees in the Mt. Washington Branch, to which the City Councilmen from the Fifth District and residents of, and the persons interested in, tht Mt. Washington area were

invited, it was the preponderance of opinion that the community would be best served by use of the library property for other purposes;

"*Be it Resolved* that the Trustees of the Enoch Pratt Free Library hereby direct that the Mt. Washington Branch of the Library be permanently closed and library service in that building be discontinued as of February 19, 1951.

"*Be it Further Resolved* that in so far as funds are available, bookmobile service be established in the Mt. Washington area in accordance with community requirements and collections of children's books be placed in the classrooms of all schools in the Mt. Washington area, as requested from time to time by the proper school officials.

"*Be it Further Resolved* that the said library property, being no longer needed for library purposes, be sold for its fair market value and that the proceeds of sale be invested in other property as hereafter may be approved by the Trustees.

"*Be it Further Resolved* that the proper officers of the Enoch Pratt Free Library are hereby directed to transmit to the Mayor and City Council of Baltimore a copy of these resolutions and a request that the Mayor and City Council of Baltimore, by appropriate legal action, assent to the sale and do all things necessary to effect a conveyance of said property.

"*And be it Further Resolved* that the proper officers of the Library are hereby authorized to join with the proper officers of the Mayor and City Council of Baltimore in executing a deed, conveying said property, and are hereby authorized to do all other acts and deeds necessary and proper to carry out these resolutions."

Complainants attacked the validity of the resolutions on the ground that the trustees lack authority to close the library and to divert the money appropriated for its maintenance to other purposes such as bookmobile service. They asked that the resolutions be declared void, and that the trustees be restrained from closing

the library as long as an appropriation has been made by the City for its maintenance.

The chancellor refused to restrain the closing of the library, but passed a decree restraining the Mayor and City Council and the trustees from selling or disposing of the library until such sale or disposition has been authorized by ordinance. The present appeal is from that decree. Defendants waived any objection they might have to defects of procedure, and consented to our passing upon the resolutions of the trustees to the same extent as if they had been presented for review upon bill and answer.

Complainants contend that the decree does not fully conform with the decision of the Court of Appeals. They argue that a sale of the branch library would (1) violate the promise made by the Mayor and City Council to Mr. Carnegie to maintain library service in the branch libraries built with his money, and (2) constitute a taking of their property without compensation and without due process of law, because members of the Carter family contributed $2,250 toward the cost of the site for the specific purpose of inducing the municipal and library officials to establish a branch library at that particular location. They claim that the donors wanted the library in their neighborhood not only for the benefit of their community, but also as a memorial to Mr. Carter. They further argue that the advantages of a public library should be given to the people in all sections of the city and that this cannot be accomplished unless branches are established within easy reach of all; that Mt. Washington is a well settled and growing community where a library is greatly needed; and that the decrease in circulation of books at that library was due to a reduction of the hours of service.

None of these contentions is new. They were all presented on the first appeal and were decided on that appeal, even though they were not set out at length in the opinion. The decree must therefore be affirmed.

514

*Carrington v. Thomas C. Basshor Co.*, 119 Md. 378, 381, 86 A. 1030.

*Decree affirmed with costs.*

