PHILLIPS *v.* OBER, POLICE COMMISSIONER FOR BALTIMORE CITY

[No. 78, October Term, 1950.]

*Decided February 8, 1951. Motion for rehearing, filed March 1, 1951, denied March 14, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Martin Beerman,* with whom was *John A. Meyer* on the brief, for appellant.

The Court declined to hear argument for the appellee. *Hall Hammond, Attorney General,* and *J. Edgar Harvey, Deputy Attorney General,* on the brief, for appellee.

MARBURY, C. J., delivered the opinion of the Court.

Appellant, who described himself as a property owner and taxpayer of the City of Baltimore engaged in the roofing and buildings improvements business in said city, brought his bill of complaint on behalf of himself and of all others similarly situated, in the Circuit Court of Baltimore City against the appellee as Police Commissioner for Baltimore City. The purpose of the bill was to restrain the Commissioner from eliminating the police district of the city known as the Western Police District, and from abandoning or discontinuing the use of the police station on Pine Street known as the Western Police Station building. The Commissioner demurred, and the chancellor sustained the demurrer and dismissed the bill. From this decree the appellant appealed.

The bill alleges that the City of Baltimore is divided into police districts, one of which has been for many years the Western Police District, in which the complainant operates his business; that, for many years,

there has been located in that area a police station known as the Western Police Station, which was acquired for such use, and is owned in fee simple by the Mayor and City Council of Baltimore, as evidenced by a deed dated October 31, 1876, and duly recorded; that the police station is used as a place of assembly for the policemen assigned to said district, houses detention quarters and cells for prisoners awaiting trial, offices for the ranking police officers of the district, and a court room presided over by the justice of the peace specially assigned to sit therein. The bill of complaint further alleges that the Commissioner has publicly stated, and has also advised the complainant, that he will direct, as of a certain definite date, that the said Western Police District be permanently abolished as a police division of the City of Baltimore, and that the use of the building known as the Western Police Station building will be abandoned, and its use discontinued. The bill then goes on to allege that the Police Commissioner is not clothed with such authority; that his actions would eliminate the magistrate's court for that district, and would deprive the people of their right to apply to that court, and that his action would therefore be a usurpation and nullification of the power and direction to the Governor to assign a magistrate to such station, made by the Legislature; that the elimination of the police district and station house would encourage increased commission of crimes, would endanger the health, safety, and lives of the people of the district, and people as a whole, and would be injurious and inimical to the interests of the people of the City.

The question raised is the proper construction of Sec. 556 of the Charter and Public Local Laws of Baltimore City (1949 Ed.) This section provides that the Police Commissioner of Baltimore City "may divide the City into such number of police districts as he may think necessary for the public good; and if found practicable, * * * he may provide additional station houses with all necessary appurtenances as may be found needful and

necessary, and such accommodations as may be requisite for the police force." These provisions are not new. Section 12 of Chapter 7 of the Acts of 1860, codified as Sec. 815 of Article 4 of Mackall's Code of Public Local Laws (1860) empowered the Board of Police, at that time established and put in charge of the policing of Baltimore, to "divide the City into the needful number of police districts". In 1867, by Sec. 819 of Chapter 367 of the Acts of that year, the Board of Police Commissioners for the City of Baltimore, to be elected by the Legislature, and given police authority over the City by that act, were authorized "to divide the city into such number of police districts as they may think necessary for the public good". In 1898, by Chapter 123, Article 4 of the Code of Public Local Laws, entitled "City of Baltimore", was repealed in its entirety and re-enacted. Section 754 of this re-enactment authorized the Board of Police Commissioners to "divide the City into such number of police districts as they may think necessary for the public good". By Chapter 559 of the Acts of 1920, the Police Commissioners were abolished, and the Governor was authorized to appoint a Police Commissioner for the City of Baltimore. Such a commissioner was to be appointed, or re-appointed, every six years, and it was provided that he should have and exercise all the powers exercised by the Board of Police Commissioners of Baltimore City, and, wherever the term "Board of Police Commissioners" was used in any of the public local, or public general, laws of the State, such term should be construed as applying to the Police Commissioner. Sec. 556 of the present charter confirms this Act by giving the powers formerly granted to the Board to the single commissioner, but in other respects, it is unchanged. There is, therefore, an unbroken legislative direction, first, to the Board of Police, then to the Board of Police Commissioners, and then to the single Police Commissioner, to divide the City into the needful number of police districts, or into such number of police districts as they, or he, may think necessary for the

public good. For ninety years this power has been lodged in the hands of the officials, or official, in control of the Baltimore Police Department.

The title to the station house property is in the City, and it is not contended that the Police Commissioner intends to dispose of this property. The contention is that he proposes to abandon its use as a police station. If it is no longer needed for public purposes, then its disposal is a matter for the Mayor and City Council to handle under Sec. 169 of the Charter. *Carter v. Baltimore*, 197 Md. 70, 78 A. 2d 212. The Mayor and City Council is not a party to this case, and we have therefore before us no question of the disposal of public property by a municipality, but only the question of the discontinuance of its use by the State official in charge of policing the city.

The appellant bases his contention that this cannot be done on two grounds, not very clearly distinguished, but somewhat interrelated. One is that the original statute authorizing the division of the City into police districts was first passed at a time when the police force was disorganized, and it was intended to be exercised at that time, but was not intended to continue so that the districts then created could be eliminated, or the City re-divided at will. The other is that since Secs. 405 and 408 of Article 4 of the Public Local Laws provide for the appointment by the Governor of justices of the peace, from whom he is to select one to sit at each station house in the City of Baltimore, the abandonment of the station house will nullify the executive action and will constitute a usurpation and nullification of the power of the Legislature, and of the Governor of the State, to establish a police court.

We are at once confronted with the right of the appellant to raise these questions. He is a property owner and taxpayer of the City, and he is engaged in business in the Western Police District. These are all of his qualifications. It is not suggested that any special damage will accrue to him on account of the proposed action of

the Police Commissioner, either in his capacity as property owner, or as a businessman. His contention is that the change would increase crime, would endanger the health, safety, and lives of the people, and would be injurious to the interests of the people of the City.

Taxpayers have standing to bring suits against municipal authorities to prevent the waste or unlawful use of public property. *Green v. Garrett,* 192 Md. 52, 63 A. 2d 326. They have no rights to enjoin the commission of a public wrong. *Weinberg v. Kracke,* 189 Md. 275 at page 279, 280, 55 A. 2d 797. The action here is brought, not against the City which is not claimed to have anything to do with the abandonment of the district and the station, but against the Police Commissioner, who is a State official. Where such an official is claimed to be wasting public funds, taxpayers' suits have at times been maintained; but we are unable to find, in this record, any such situation, which would give the appellant a right to come into court and ask that the Police Commissioner be enjoined. As the appellant has no right in the first instance to raise the questions he does, they are not properly before us for decision, and we cannot pass upon them. The chancellor dismissed the bill of complaint. It should have been dismissed on the ground that the appellant had no standing to bring suit, and, therefore, the action of the chancellor will be affirmed.

*Decree affirmed with costs.*